Charles Murray HAUPT  *v.*  Udaya KUMAR, M.D.

CA 08-229                                          288 S.W.3d 704

Court of Appeals of Arkansas
Opinion delivered October 29, 2008

*The Brad Hendricks Law Firm,* by: *Lamar Porter,* and *James Swindoll,* for appellant.

*Anderson, Murphy & Hopkins, LLP,* by: *Overton S. Anderson* and *Brett D. Watson,* for appellee.

JOHN MAUZY PITTMAN, Chief Judge. This is an appeal from a directed verdict granted to the defendant-appellee physician in a medical malpractice case. The plaintiff-appellant patient asserts that the trial court erred in granting a directed verdict because he had established a prima facie case and because material questions of fact remained for the jury with respect to negligence and proximate cause. We agree, and we reverse and remand.

In determining whether a directed verdict was properly granted, we view the evidence in the light most favorable to the party against whom the verdict was sought and give it its highest

probative value, taking into account all reasonable inferences deducible from it. *Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993); *Lytle v. Wal-Mart Stores, Inc.*, 309 Ark. 139, 827 S.W.2d 652 (1992). A motion for a directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Boykin v. Mr. Tidy Car Wash, Inc.*, 294 Ark. 182, 741 S.W.2d 270 (1987). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Mankey v. Wal-Mart Stores, Inc., supra.*

Appellant presented as a patient to appellee, Dr. Kumar, a urologist. Dr. Kumar diagnosed appellant as suffering from a fistula, as well as communication between the bladder and the bowel resulting from multiple diverticula in the sigmoid colon where it overlapped the bladder. Dr. Kumar recommended that appellant undergo surgery and anticipated that it would be necessary to remove part of the bowel and possibly to perform a colostomy during the procedure. There was evidence that Dr. Kumar also told appellant that, as a urologist, he would not be comfortable performing the procedure without the assistance of a general surgeon, and that a general surgeon would therefore perform the bowel portion of the surgery and would be present in the operating theater during the entire procedure. Dr. Kumar then wrote a letter to appellant's family doctor stating that he was enlisting the help of general surgery colleagues to assist in appellant's surgery. At Dr. Kumar's direction, a hospital resident obtained a consent form from appellant that expressly authorized Drs. Kumar and Heaton to perform the surgery. Dr. Heaton was a general surgeon at the facility, but no effort was made to contact him; therefore, he was not present when the surgery was performed, and no other general surgeon helped with the surgery.

During the surgery, appellant suffered an injury to his ureter as the result of an obstruction. A CT scan showed that a surgical clip had been left in his body posterior to the ureter. Dr. Kumar admitted at trial that the injury was probably iatrogenic, *i.e.*, caused by a physician, and that the surgical clip was a possible cause of the obstruction. Subsequent surgical attempts to repair appellant's injured ureter failed, and ultimately it was necessary to remove the kidney attached to that ureter and transplant it to the other side of appellant's body to retain its functionality.

The pivotal issue in this case is whether appellant consented to the procedure that was performed. Clearly, there was evidence

that he did not. Appellant testified that he was assured by Dr. Kumar that a board-certified surgeon would assist him in performing abdominal surgery on appellant. The surgeon who was to assist Dr. Kumar was named on the consent sheet that appellant signed. It is uncontested that Dr. Kumar did not contact the named surgeon to request that he assist in the procedure, and there was evidence to support a jury finding that Dr. Kumar completed the entire surgery himself; that appellant was injured as the result of Dr. Kumar's performance of the surgery; and that appellant required extensive medical treatment, including an auto-transplant of one of his kidneys, as a result of an iatrogenic injury during the surgery.

Dr. Kumar raises questions concerning the certainty of the expert medical testimony regarding the standard of care, but this is a chimera. In addition to the testimony of appellant's expert that consent based on false and misleading information violated the standard of care, Dr. Kumar himself testified that a consent obtained under the facts and circumstances alleged by the appellant would be invalid, and that a procedure performed without a valid consent would be outside the standard of care. Dr. Kumar also argues that there was no proof that the failure to employ a general surgeon to assist increased the likelihood of the injury that appellant sustained, but this argument is based on the presumption that appellant would have had the surgery performed in any event. We note that there was testimony that appellant's condition was not immediately life threatening and that many people choose to endure the condition for many years before opting for surgery, and appellant testified positively that he would not have had the surgery had he known that no general surgeon would be in attendance. Arkansas Code Annotated section 16-114-206(b)(1) (Repl. 2006) provides in pertinent part:

> [W]hen the plaintiff claims that a medical care provider failed to supply adequate information to obtain the informed consent of the injured person, the plaintiff shall have the burden of proving that the treatment, procedure, or surgery was performed in other than an emergency situation and that the medical care provider did not supply that type of information regarding the treatment, procedure, or surgery as would customarily have been given to a patient in the position of the injured person or other persons authorized to give consent for such a patient by other medical care providers with

similar training and experience at the time of the treatment, procedure, or surgery in the locality in which the medical care provider practices or in a similar locality.

Subsection (b)(2) of that statute states in pertinent part:

In determining whether the plaintiff has satisfied the requirements of subdivision (b)(1) of this section, the following matters shall also be considered as material issues:

(A) Whether a person of ordinary intelligence and awareness in a position similar to that of the injured person or persons giving consent on his or her behalf could reasonably be expected to know of the risks or hazards inherent in such treatment, procedure, or surgery;

(B) Whether the injured party or the person giving consent on his or her behalf knew of the risks or hazards inherent in such treatment, procedure, or surgery;

(C) Whether the injured party would have undergone the treatment, procedure, or surgery regardless of the risk involved or whether he or she did not wish to be informed thereof . . . .

Lack of informed consent may be the proximate cause of an injury inflicted during surgery even where the patient does not testify positively that he would not have undergone the procedure had he been adequately informed. *See, e.g., Aronson v. Harriman,* 321 Ark. 359, 901 S.W.2d 832 (1995). In *Aronson,* the supreme court adopted an objective standard for determining the effect of proximate cause in medical malpractice actions based on allegations that informed consent was lacking. Under this objective standard, causation is evaluated in terms of whether a reasonable and prudent patient in the plaintiff's position would have withheld consent to the treatment or procedure had the material risks been disclosed. *Id.*

In light of the evidence that appellant was informed that Dr. Kumar would not be comfortable performing the proposed surgery without a general surgeon in attendance; that Dr. Kumar wrote a letter affirming that a general surgeon would in fact be in attendance; that a general surgeon was specifically named in the consent that appellant executed; and the expert testimony that it was good medical practice for a urologist to associate a general

surgeon to assist in such circumstances, we hold that it was for the jury to decide whether a reasonable and prudent patient would have withheld consent to the surgery in the absence of the misrepresentation that a general surgeon would be present.

Reversed and remanded.

BAKER and HUNT, JJ., agree.